UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **VIRGINIA LYNN CARTER,** ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 05-2162 |
| **BOARD OF EDUCATION CHAMPAIGN** ) | |
| **COMMUNITY UNITED SCHOOL** ) | |
| **DISTRICT #4,** ) | |
| Defendant. ) | |

# O R D E R

In July 2005, Plaintiff, Virginia Carter, filed a complaint in the Circuit Court of the Sixth Judicial Circuit, Champaign County, Illinois, against Defendant, the Board of Education of Champaign Community Unit School District No. 4. In July 2005, Defendant removed the case to federal court by filing a Notice of Removal (#1). Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331.

In August 2005, Defendant filed a Motion To Dismiss Counts III, VI, and VII (#3). After reviewing the parties' pleadings and memoranda, Defendant's Motion To Dismiss Counts III, VI, and VII **(#3)** is **GRANTED in part** and **DENIED in part.**

## I. Background

The following background is taken from the complaint. At relevant times, Dorland Norris was Deputy Superintendent of the District and Ecomet Burley was Assistant Superintendent for Achievement and Pupil Services. Plaintiff worked for the District as principal at Booker T. Washington School from 2000 until mid-2004. A written contract between Plaintiff and Defendant established the terms of her employment.

From 2002-2006, Plaintiff did not receive a salary increase, nor was she given a formal remediation plan. In May 2003, Ms. Norris recommended that Plaintiff be retained without a remediation plan. Plaintiff did not receive a raise at that time, nor was she notified of any areas of performance that needed to be improved in order to receive a raise. In 2003, Norris informed Plaintiff that some complaints had been received from parents and that Plaintiff should draft her

own remediation plan.  In September 2003, Norris sent Plaintiff a notice stating that a remediation would be developed.  Plaintiff never received a formal plan from Defendant, and Defendant did not respond to the remediation plan that Plaintiff had drafted on her own.  Plaintiff complied with the provisions of her own informal remediation plan.

In October 2003, Ecomet Burley, the assistant superintendent, visited Booker T. Washington School.  During that visit, he observed an interaction between a school secretary and a substitute secretary, Deb Bone, and also observed some items in the school that presented an unsightly appearance.  In November 2003, Plaintiff met with Burley and others and Burley told her to fire Bone and to clean up the hallway and front entrance.  Plaintiff fired Bone, and told Bone that Burley had instructed Plaintiff to do so.  She also informed other Booker T. Washington staff that Burley was not pleased with the appearance of the building.

In February 2004, Burley sent Plaintiff a memorandum regarding the November 2003 meeting and Plaintiff's handling of the issues raised at that meeting.  The memorandum states, in part, as follows:  "Ms. Carter, your handling of confidential school-related information by telling your staff and Ms. Bone that I was the source of this information was inappropriate and showed poor judgment on your part . . . .  Your indiscretion in this situation has caused irreparable harm."  (Complaint, Ex. E.)

In March 2004, Plaintiff met with Burley and outlined specifically how Plaintiff had complied with the informal remediation plan.  On April 19, 2004, Burley told Plaintiff that Plaintiff would be reassigned from Booker T. Washington School and that he was not sure there was a place for Plaintiff with the District.  Later in the day on April 19, 2004, Carol Stack, Deputy Superintendent for the District, informed Plaintiff that if Plaintiff did not provide a letter of resignation, a board meeting would be called immediately.  Plaintiff submitted a letter asking for reassignment to another school in the District.

On June 1, 2004, Plaintiff met with Burley for a final evaluation. Burley's summary evaluation stated in part that "the recommendation to reassign Ms. Carter to another position in the district has been made and accepted by Superintendent and the Board of Education." (Complaint, Ex. G.) Plaintiff was ultimately told that no position was available for her in the District. On June 4, 2004, Plaintiff informed Defendant that she had accepted an administrative position at another school.

As a result of Defendant's actions, Plaintiff has lost wages, retirement income, and raises to which she was entitled. She has also suffered damage to her reputation and incurred relocation expenses.

Plaintiff's seven-count complaint alleges breach of contract, breach of contract pursuant to state statute (105 ILCS 5/10-23.8(B)), constructive discharge, violation of procedural due process/occupational liberty pursuant to 42 U.S.C. § 1983 (hereinafter "Section 1983"), violation of substantive due process pursuant to Section 1983, violation of procedural due process under the Illinois Constitution, and violation of substantive due process under the Illinois Constitution.

## II. Standard

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case. *Miller v. Reebie Storage and Moving Co., Inc.*, No. 93 C 3986, 1993 WL 414689, *1 (N.D. Ill. Oct. 15, 1993). When considering a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the claim and draw all reasonable inferences in the light most favorable to the nonmoving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997). The Court should dismiss the case only if the nonmoving party can prove no set of facts consistent with the allegations of the complaint that would entitle him to relief. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319-20 (7th Cir. 1997).

### III.  Analysis

Defendant argues that the Court should dismiss Counts III, VI, and VII because (1) no such cause of action as "constructive discharge" exists under Illinois law (Count III); and (2) the Illinois Constitution does not provide a private right of action for violations of procedural and substantive due process (Counts VI and VII).

### A.  Constructive Discharge (Count III)

Defendant first argues that Illinois law does not recognize the claim of constructive discharge alleged in Count III.  In Count III, Plaintiff alleges that, assuming it is found that Plaintiff resigned, she was forced to resign; Burley and Stack's statements to Plaintiff that Plaintiff would be fired if she did not resign made Plaintiff's workplace unbearable and intolerable; Plaintiff reasonably assumed that if she did not resign, her employment would be terminated; Defendant breached its contract with Plaintiff by making her workplace unbearable and intolerable; and Plaintiff performed all the conditions of her contract.

In support of its argument, Defendant relies on *Washburn v. IBP, Inc.*, in which the plaintiff alleged retaliatory discharge based on constructive discharge; he claimed the constructive discharge occurred because he was forced to leave the plant where he was employed to seek medical attention that his employer failed to provide.  *Washburn v. IBP, Inc.*, 910 F.2d 372 (7th Cir. 1990).  When considering this retaliatory discharge claim, the Seventh Circuit stated, "Illinois does not recognize a cause of action for constructive discharge." *Id.* at 374 n.2.

Defendant acknowledges that Illinois law recognizes the *doctrine* of constructive discharge in limited circumstances.  For example, in *Hinthorn v. Roland's of Bloomington, Inc.*, 519 N.E.2d 909, 912 (Ill. App. Ct. 1988), the court distinguished between constructive discharge based on a forced resignation and constructive discharge based on harassment, and concluded that Illinois courts had rejected application of the constructive discharge doctrine where the purported discharge was based on the existence of harassment.  Defendant also acknowledges that constructive discharge may be an element of other employment discrimination claims.  *See, e.g., Burnell v. Gen. Tel. Co. of Ill., Inc.*, 536 N.E.2d 1387, 1389 (Ill. App. Ct. 1987) (applying

the concept of constructive discharge to a claim under the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 *et seq*.)).

Plaintiff responds that Defendant has viewed the claim in Count III too narrowly. She contends that courts have recognized a claim for constructive discharge under federal law when employers cause employees to resign by creating intolerable working conditions. In support, Plaintiff cites *Levenstein v. Salarsky*, 414 F.3d 767, 774 (7th Cir. 1991), and contends that it stands for the proposition that a plaintiff could bring a constructive discharge claim as a constitutional claim when that claim is based on a violation of due process rights. A review of *Levenstein* indicates that the claim at issue was a due process claim and the Seventh Circuit *applied* the doctrine of constructive discharge to that claim. *Levenstein* does not, however, hold or state that "constructive discharge" constitutes an independent basis for liability.

In *Pennsylvania State Police v. Suders*, the United States Supreme Court describes the constructive discharge doctrine as follows: "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." *Pa. State Police v. Suders*, 542 U.S. 129, __, 124 S. Ct. 2342, 2351-52 (2004). Thus, the Supreme Court characterized the constructive discharge doctrine as a mechanism that enables a plaintiff to state a retaliatory discharge claim when an employer does not directly discharge the employee. In *Suders*, the underlying basis for liability was the employer's violation of Title VII; the Supreme Court subsequently applied the constructive discharge doctrine to that Title VII claim.

We do not think that a claim of "constructive discharge" stands alone as a viable basis for liability, any more than a claim of "termination of employment" would stand alone. The mere allegation of loss of employment, whether based on constructive discharge or direct termination of employment, is not enough to state a claim; a plaintiff must also allege some grounds for holding the employer liable for that loss. Thus, "the doctrine is ancillary to an underlying claim in which an express discharge otherwise would be actionable . . . it joins the actionable claim and

5

operates as a defense against an employer's contention that the employee quit voluntarily." *Strozinsky v. Sch. Dist. of Brown Deer*, 614 N.W.2d 443, 462 (Wis. 2000).

In defense of her constructive discharge claim, Plaintiff states, "Plaintiff's due process rights under the federal constitution were violated, depriving her of a protected property interest" (Plaintiff's Response to Defendant's Motion To Dismiss, #9, p. 2), and "Plaintiff was either terminated by Defendant or forced to resign in violation of her rights under §1983" (#9, p. 3). Thus, it appears that, in Count III, she is attempting to allege that Defendant violated her right to due process. As an initial matter, it is well-recognized that Section 1983 does not create any substantive rights; rather, it is only a vehicle by which violations of the United States Constitution and selected federal statutes may be redressed. Therefore, when pleading a claim pursuant to Section 1983, the plaintiff must allege the specific right at issue. *See Graham v. Connor,* 490 U.S. 386, 394 (1989).

It is also well-established that a plaintiff cannot amend her complaint through arguments presented in her legal memoranda. *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993). Plaintiff indicates in her memorandum that she is attempting to state a due process claim based on constructive discharge rather than termination. If so, it is not clear from the allegations of the complaint, particularly in light of her clear statement of due process claims in Counts IV and VI. Accordingly, the Court grants the motion to dismiss and allows Plaintiff to amend her claim in Count III.

### B.  Procedural and Substantive Due Process Claims (Counts VI and VII)

Defendant next argues that Plaintiff has no private right of action for procedural and substantive due process claims under Article I, Section 2 of the Illinois Constitution. *See Faulkner-King v. Wicks*, 590 N.E.2d 511, 516 (Ill. App. Ct. 1992). In *Faulkner-King*, the court dismissed a due process claim brought pursuant to Article I, Section 2 of the Illinois Constitution, stating that the Illinois Human Rights Act (775 ILCS 5/1-101 *et seq.*) (hereinafter "IHRA") is the exclusive remedy for employment discrimination claims. *Id*. Plaintiff

distinguishes *Faulkner-King* because, in that case, the due process claim was based on sex discrimination in employment, an area expressly preempted by the IHRA. (*See* 775 ILCS 5/2-102.) Here, the due process claims are not based in any way on discrimination. Moreover, the preemptive reach of the IHRA is limited to those grounds identified in the statute as civil rights violations. (*See* 775 ILCS 5/1-103(D).) Denial of due process is not one of those enumerated grounds.

Plaintiff responds that Illinois law recognizes a private right of action under Article I, Section 2. In support, she cites several cases. *See Garrido v. Cook County Sheriff's Merit Bd.*, 811 N.E.2d 312 (Ill. App. Ct. 2004); *Prato v. Vallas*, 771 N.E.2d 1053 (Ill. App. Ct. 2002); *Van Kast v. Bd. of Educ. of the City of Chi., Ill.*, No. 87 C 2582, 1988 WL 2791 (N.D. Ill. Jan. 12, 1988) (unreported). In *Garrido*, a deputy sheriff alleged that the county sheriff's merit board violated her right to substantive due process when it terminated her employment based on her violation of the zero-tolerance drug-free workplace policy. *Garrido*, 811 N.E.2d at 319. In *Prato*, a public school principal alleged that the school board violated her right to due process under the federal and state constitutions when it discharged her for violations of an employment contract. *Prato*, 771 N.E.2d at 1064. In *Van Kast*, a high school principal sued the school board for suspending him without pay, claiming that his presuspension hearing did not accord him due process, in violation of federal and state constitutions and state statute. *Van Kast,* 1988 WL 2791, at *1.

As a general rule, unless a constitutional provision has self-executing language, it requires implementing language in order for an individual to be able to bring suit to enforce the right conferred by the particular provision. *See, e.g., Baker v. Miller*, 636 N.E.2d 551, 553 (Ill. 1994). For example, Article I, Section 17 of the Illinois Constitution, which addresses employment discrimination, includes the following self-executing language: "These rights are enforceable without action by the General Assembly . . . ." ILL. CONST., Art. I, § 17. This clause "makes clear that the provision is self-executing; no implementing legislation is necessary to sustain a cause of action for section 17 discrimination." *Baker*, 636 N.E.2d at 553. Thus, suits

can be brought directly under Section 17 because that Section provides a private right of action in the form of a self-executing provision. In contrast, in *Teverbaugh v. Moore*, the court, addressing Article I, Section 18, noted the absence of language providing a right of action for damages. *Teverbaugh v. Moore*, 724 N.E.2d 225, 229 (Ill. App. Ct. 2000). In the absence of implementing legislation, the court concluded that Section 18 was not self-executing; therefore, the plaintiff had no private right of action under Section 18.

Article I, Section 2 of the Illinois Constitution states, "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." ILL. CONST., Art. I, § 2. It does not contain any self-executing language. *See Jacobson v. Nat'l R. R. Passenger Corp.*, No. 97 C 6012, 1999 WL 1101299, *11 (N.D. Ill. Nov. 29, 1999) (unreported) (stating that the Illinois Constitution does not contain an express remedy for a violation of Article I, Section 2).

In the absence of self-executing language, courts have also held that constitutional provisions may be self-executing when they are negative or prohibitory in character (*Law v. People ex rel. Huck*, 87 Ill. 395 (Ill. 1877)), when they limit the power of the government or prohibit the performance of any act by an officer or person (*Washingtonian Home of Chi. v. City of Chi.*, 41 N.E. 893 (Ill. 1895)), or when they are merely declaratory of the common law (C.J.S., Constitutional Law § 48).

The language of Article I, Section 2 is negative or prohibitory in nature, therefore, it is self-executing. *See Methodist Med. Ctr. of Ill. v. Taylor*, 489 N.E.2d 351, 354 (Ill. App. Ct. 1986) (stating that under both the federal and Illinois constitutions, the due process clauses "stand as a prohibition against governmental action"). Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's state constitutional claims.

## IV.  Summary

For the reasons set forth above, Defendant's Motion To Dismiss Counts III, VI, and VII **(#3)** is **GRANTED** as to Count III and **DENIED** as to Counts VI and VII.  Because it is conceivable that Plaintiff can amend her complaint to state a claim in Count III, the dismissal is without prejudice and Plaintiff is granted leave to file an amended complaint within fourteen (14) days of this Order.

ENTER this 6th day of December, 2005

s/ DAVID G. BERNTHAL<br>U.S. MAGISTRATE JUDGE